## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARL R. CLAY JR. and** ) | |
| **SUSAN CLAY** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Case No. 12-077 (RJL)** |
| ) | |
| **BLUE HACKLE NORTH** ) | |
| **AMERICA, LLC,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION
November **30**, 2012 [Dkt. # 3]

Plaintiffs Carl R. Clay, Jr. and Susan Clay (collectively, "plaintiffs") bring this action against Blue Hackle North America, LLC ("Blue Hackle North America"), Blue Hackle Group, LLC ("Blue Hackle Group"), Blue Hackle, LLC ("Blue Hackle LLC"), Blue Hackle International Limited ("BHIL"), Blue Hackle LTD a/k/a Blue Hackle Limited ("Blue Hackle LTD") and Blue Hackle Middle East, WLL ("BHME") (collectively, "defendants"), seeking compensatory damages for negligence and loss of consortium. Before the Court is the defendants' Motion to Dismiss [Dkt. #3]. Upon consideration of the parties' pleadings, relevant law, and the entire record therein, the defendants' Motion to Dismiss is GRANTED.

1

## BACKGROUND

Plaintiff Carl Clay, a resident of West Virginia, was employed as a civilian contractor by TolTest, Inc. ("TolTest"), a corporation that contracts with the United States Department of Defense through the Air Force Center for Engineering and the Environment ("AFCEE") to provide construction and support services for operations in the Republic of Iraq ("Iraq").   Compl. ¶¶ 4, 13, 15, ECF No. 1.  TolTest contracted with the defendants to provide static and convoy security for company personnel, including Mr. Clay, who worked as a Project Manager for TolTest in Iraq.  *Id.* ¶¶ 15-16.

On or about January 24, 2009, Mr. Clay was expected to travel from Baghdad, Iraq to Baquba, Iraq, in a convoy operated by the defendants, to conduct a final inspection of Kirkush Military Training Base.  *Id.* ¶ 18.  The B-6 transport vehicle provided by defendants, however, was not equipped with seat belts in its rear passenger seats, in violation of AFCEE's November/December 2008 warning that all convoy passenger vehicles were to have operating seatbelts for purposes of safeguarding the occupants required to ride in such vehicles.  *Id.* ¶¶ 17-18, 20.  When Mr. Clay and a fellow passenger, an Air Force Major, notified defendants' employees about the lack of rear seat belts in the convoy, the convoy's commander indicated that it would be "OK" to travel in the vehicle.  *Id.* ¶ 21.  With no other viable travel options at the time, Mr. Clay opted to travel in defendants' convoy.  *Id.* ¶ 22.

On the return trip from the Kirkush Military Training Base to Baghdad, the driver of the B-6 vehicle, an employee of the defendants, lost control of the vehicle while driving at a speed of approximately sixty to seventy miles per hour.  *Id.* ¶ 23.  The vehicle

2

went airborne and subsequently rolled halfway over and side to side, during which time

Mr. Clay struck his head on the interior walls of the vehicle and suffered severe trauma to

his head, neck and arms. *Id.* ¶¶ 23-24. As a result, Mr. Clay was required to undergo an

extensive anterior cervical vertebrectomy and fusion from the C3 to C6 level of his spine,

and continues to undergo physical therapy and medical treatment. *Id.* ¶ 32.

Mr. Clay and his wife, Susan Clay, filed this suit against defendants on January

13, 2012. *See generally id.* Alleging six separate counts of negligence against various

Blue Hackle entities and one count of loss of consortium against all of the defendants,

plaintiffs ask this Court to grant judgment in their favor, as well as compensatory

damages and an award of costs. *Id.* Defendants moved to dismiss this action on March

5, 2012. *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 3. For the following

reasons, this action must be dismissed.

## ANALYSIS

### I.    Personal Jurisdiction

Defendants move to dismiss the complaint under Rule 12(b)(2) of the Federal

Rules of Civil Procedure on the ground that this Court cannot exercise personal

jurisdiction over any of the defendant entities in this case. Defs.' Mem. in Supp. of Mot.

to Dismiss ("Defs.' Mem.") at 3-10, ECF No. 3-1.

The plaintiffs bear the burden of establishing personal jurisdiction over the

defendants. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 332 F. Supp. 2d 63,

66 (D.D.C. 2004). To meet this burden, plaintiffs "must allege specific acts connecting

[the] defendant with the forum" and "cannot rely on conclusory allegations." *Second*

*Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)

(alterations in original) (citations omitted); *Purdue Research Found.*, 332 F. Supp.2d at

66.  In assessing challenges to personal jurisdiction, the Court need not treat all of

plaintiffs' allegations as true, and instead "may receive and weigh affidavits and any

other relevant matter to assist it in determining the jurisdictional facts." *United States v.*

*Phillip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

Defendants acknowledge that Blue Hackle North America and Blue Hackle LLC

are based and operate in the District of Columbia ("the District"). *See* Defs.' Mem. at 6.

As such, these entities "[maintain a] principal place of business in the [] District of

Columbia" such that this Court may exercise personal jurisdiction over them.  D.C. Code

§ 13-422.  For defendants Blue Hackle Group, BHIL, Blue Hackle LTD and BHME,

however, the District is not their principal place of business, and thus require this Court

to perform a two-part inquiry: (1) determine, under the state's long-arm statute, here D.C.

Code § 13-423[1], whether jurisdiction is applicable and then (2) examine whether a

jurisdictional finding satisfies the constitutional requirements of due process. *GTE New*

*Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *see United*

*States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  With regard to the latter prong, the

---

[1] The District's long-arm statute, D.C. Code § 13-423(a), provides: "A District of
Columbia court may exercise personal jurisdiction over a person, who acts directly or by
an agent, as to a claim for relief arising from the person's (1) transacting any business in
the District of Columbia; (2) contracting to supply services in the District of Columbia;
(3) causing tortious injury in the District of Columbia by an act or omission in the District
of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission
outside the District of Columbia if he regularly does or solicits business, engages in any
other persistent course of conduct, or derives substantial revenue from goods used or
consumed, or services rendered, in the District of Columbia."

Court must examine whether a defendant's "minimum contacts" with the District, if any, are such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

Unfortunately, plaintiffs establish no basis for this Court's exercise of personal jurisdiction over Blue Hackle Group, BHIL, Blue Hackle LTD or BHME in this case under the District's long-arm statute. First, plaintiffs' complaint fails to allege facts with respect to these defendants' contacts with the District, whether by transacting business or contracting to supply services here. Indeed, plaintiffs' conclusory allegations that each non-resident defendant "has its United States Headquarters and/or conducts business directly, or through its affiliates and/or agents, including Blue Hackle North America, in the District of Columbia" are of no value. *See* Compl. ¶¶ 8-11; Pls.' Mem. in Supp. of Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 2, ECF No. 24-1; *Parisi v. Sinclair*, 806 F. Supp.2d 93, 96 (D.D.C. 2011). Although plaintiffs attempt to skirt the specificities by broadly asserting that the contracts or bids to provide the convoy and security services at issue in this case were secured or conducted through Blue Hackle North America and Blue Hackle LLC's offices in the District, Compl. ¶ 14, plaintiffs cannot meet their burden of establishing jurisdiction without factual allegations as to the contracts' terms or execution which might demonstrate Blue Hackle Group, BHIL, Blue Hackle LTD and BHME's minimum contacts with the District. *See Lance v. Wilson*, 811 F. Supp. 2d 106, 109 (D.D.C. 2011).

Considering the plaintiffs' residence in West Virginia, the complaint also fails to reveal any basis from which the Court might conclude that plaintiffs suffered an injury here, whether by act or omission committed inside or outside of the District. *See* Compl. ¶¶ 4-5. Defendants, by comparison, have tendered a sworn statement that: (1) Blue Hackle Group does not exist; (2) BHME is headquartered in the Kingdom of Bahrain and conducts its regular business in Iraq, Afghanistan and Yemen; (3) BHI is headquartered in the United Kingdom; and (4) Blue Hackle LTD is headquartered in the United Kingdom, where it solely conducts its business. *See* Defs.' Reply Mem. in Support of Mot. to Dismiss ("Defs.' Reply"), Ex. A ¶¶ 7, 10-11, 13, ECF No. 31-2. Without more than unsubstantiated assertions lacking in any concrete evidence, the Court has no basis for exercising jurisdiction over Blue Hackle Group, BHIL, Blue Hackle LTD or BHME, which have little or no connection to the United States, much less the District.

Second, plaintiffs have not made a sufficient showing of the "unity of ownership and interest" that is necessary to attribute the jurisdictional contacts of District of Columbia-based Blue Hackle North America and Blue Hackle LLC to Blue Hackle Group, BHIL, Blue Hackle LTD or BHME. *See Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 786 (D.C. Cir. 1998); *Labadie Coal Co. v. Black*, 672 F.2d 92, 96-99 (D.C. Cir. 1982). Although plaintiffs allege, in broad strokes, that all of the defendants "conduct business together as different elements of the same common enterprise operating generically as 'Blue Hackle' or 'The Blue Hackle Group,'" Compl. ¶ 12, their threadbare assertions and unauthenticated exhibits fail to show that Blue Hackle North America and Blue Hackle LLC "so dominated [the non-D.C.-based defendants] as to

6

negate [their] separate personalit[ies]" under an alter ego theory. *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, 2006 WL 2711527, *13 (D.D.C. Sept. 21, 2006). Indeed, plaintiffs fail to counter defendants' sworn affidavit that Blue Hackle LTD, BHI, and BHME each have their own set of officers and directors, and that Blue Hackle LTD and BHME are wholly responsible for their own daily operations and maintain their own business records and accounts.[2] Absent any allegations to show the non-resident defendants' purposeful activities sufficient to invoke the benefits or protections of the District's laws, exercise of personal jurisdiction over Blue Hackle Group, BHIL, Blue Hackle LTD and BHME does not comport with due process.[3]

---

[2] *See* Defs.' Reply, Ex. A ¶¶ 10-11, 13; *Oceanic Exploration*, 2006 WL 2711527, *13 (Court could not make informed assessment as to whether it had personal jurisdiction over foreign subsidiaries under alter ego theory due to paucity of individualized evidence as to actual, existing relationship between parent and foreign subsidiaries); *Labadie Coal*, 672 F.2d at 97 ("relatively simple formalities of creating and maintaining a corporate entity" are "themselves an excellent litmus of the extent to which the individuals involved actually view the corporation as a separate being").

[3] Defendants also move to dismiss under Rule 12(b)(3) because venue in the District is improper. *See* Defs.' Mem. at 10-13. Based on the current record, I agree. Plaintiffs cannot establish venue in the District under the general venue provision, 28 U.S.C. § 1391(b), because they have not shown that all of the defendants reside in the District or are subject to personal jurisdiction here, *see* 28 U.S.C. § 1391(c), or that a significant part of the events that gave rise to plaintiffs' claims occurred in the District. In addition, plaintiffs have not shown that there is no other district in which the action could have been brought. Indeed, the complaint make clear that the series of events giving rise to plaintiffs' claims occurred in Iraq, and the defendants' actions have allegedly caused tortious injury and loss of consortium in the state of plaintiffs' residence, West Virginia. Therefore, venue is not proper in the District, and the case must be dismissed as well for lack of venue.

## CONCLUSION

For all the foregoing reasons, defendants' Motion to Dismiss [Dkt. #3] is

GRANTED.  An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

8